(No. 37384.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES ERICKSON, Plaintiff in Error.

*Opinion filed September 29, 1964.*

MAURICE E. GROSBY, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM J. BAUER, State's Attorney, of Wheaton, (FRED G. LEACH, Assistant Attorney General, and WILLIAM V. HOPF and JAMES E. FITZGERALD, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

James Erickson was convicted of burglary in a jury trial in the circuit court of Du Page County and sentenced to a term of 3 to 8 years imprisonment. A writ of error presents constitutional questions arising from what it is contended was an unreasonable search and seizure violative of the fourth and fourteenth amendments to the United States constitution and section 6 of article II of the Illinois constitution.

The defendant was riding in a 1953 Pontiac automobile, with Florida license plates and showing damage to its front end, being driven by James Marino on Route 59 in Du Page County about 3:00 P.M., on December 7, 1960. The car was observed and followed by a State trooper who noticed the brake lights did not operate when the vehicle slowed as it approached railroad tracks. The officer signalled the car driver to pull over and asked to see his driver's license. Marino stated he had no driver's license, was "re-learning" to drive and did not know of the defective brake lights. The officer inquired as to whether defendant owned the car, and defendant replied that he did but could produce no documentary proof. Defendant had and exhibited a valid Florida driver's license. He could not explain the damage to the car.

The trooper then informed defendant that he was under

arrest for allowing an unauthorized driver to operate his motor vehicle, and arrested Marino for driving without a license. The officer, while there, noticed a brown rubberized cord extending a foot and a half to two feet out of the car trunk. The car occupants were then taken to the Naperville police station where defendant stated he lived in Chicago at .2900 North Clark Street. The police then asked defendant for permission to search his car including the locked trunk. Defendant refused, saying he had no key and would have to consult an alleged co-owner of the car before giving permission. The Naperville police sergeant thereupon searched the automobile without a search warrant, including moving the rear seat forward and looking into the trunk with a flashlight, where he saw "what appeared to be a clock radio" and "what looked like a typewriter". He thereafter reported his findings to the trooper who called the Chicago Police Department Bureau of Investigation and determined that defendant had a police record. Upon further questioning defendant said he and Marino had left Chicago at 10:00 A.M. that day to go for a ride and that the car had been loaned to someone else on the previous day.

Thereafter the officers again searched the car, moving the rear seat and unlocking the trunk from the inside. Various household appliances and other articles therein were removed, including a box of silverware upon which this conviction is predicated and which was admitted into evidence following denial of defendant's motion to suppress this exhibit. After the search and removal of the articles, a telephone call was received by the police from a Mrs. Hagman reporting that a set of silverware had been taken from her burglarized home. The Hagmans came to the jail and identified as theirs the box of silverware removed from the Pontiac. The single issue before us is as to the correctness of the ruling upon the motion to suppress.

It should be observed that, while many of the cases cited by both the People and defendant deal with the validity of

searches made incidentally to valid arrests, that is not the problem posed by these facts. (*Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. ed. 2d 777.) The instant question is, as conceded by the People, whether the totality of the facts and circumstances known to the officers at the time of the search constituted probable cause justifying a search of the automobile without a warrant. It is our opinion that they did not.

It has long been established that the constitutional safeguards contained in section 6 of article II of the constitution of this State and the fourth amendment of the United States constitution do not prohibit all searches made without a warrant but only those which are unreasonable, and that a determination of the reasonableness of any given search must be made upon the facts there present. *United States* v. *Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. ed. 653; *People* v. *Watkins,* 19 Ill.2d 11.

It is equally well established that valid searches which are not incidental to an arrest may be made without a warrant. Such searches, however, must be based upon probable cause, defined as a knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed, and that evidence thereof is contained in the automobile. (*Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. ed. 543; 74 A.L.R. 1457, *et seq.*). The absence, in the case of moving vehicles, of an opportunity to secure a search warrant, is frequently cited as a reason for sustaining such searches. But, in all cases, the search must be for specific property, and may not be exploratory and made solely to find evidence of guilt. *Guido* v. *United States,* (7th cir. 1958,) 251 F.2d 1, cert. den. 356 U.S. 950, 78 S. Ct. 915, 2 L. ed. 2d 843.

We have examined the cases cited by the People and do not consider them authority for the argument here made that the facts and circumstances known to the police prior to the search constituted probable cause for the search. In

*People* v. *Heidman*, 11 Ill.2d 501, the entry and search were justified by the invitation and consent of defendant to the officers' entry into the apartment where the seized articles were in plain view necessitating no search to seize them: in *People* v. *Tillman*, 1 Ill.2d 525, the search was approved as incidental to a lawful arrest, as was true in *Rabinowitz* and *People* v. *Berry*, 17 Ill.2d 247. *Watkins* dealt with a search of the person, which is not here involved, and *Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 51 S. Ct. 153, 75 L. ed. 374, held the search there made unreasonable. *People* v. *Faginkrantz*, 21 Ill.2d 75, is most nearly analogous to the case at bar. There the officers found defendant in an alley at 4:30 A.M. behind his automobile which was parked behind a plumbing supply firm with the motor and lights turned off. Since the officers knew of several burglaries and attempted burglaries in buildings abutting the alley, they asked defendant for identification. He had no evidence of ownership of the car, and his driver's license showed he did not live in the vicinity. He admitted having been in the penitentiary, and said he was returning from a neighborhood tavern and had stopped to defecate. The officers testified defendant told them they could search the car. They did so, finding the items upon which defendant's conviction of possession of burglary tools was predicated. Our affirmance there of the trial court's denial of defendant's motion to suppress the tools so seized was based upon the existence of probable cause to search the car.

While there are similarities between *Faginkrantz* and the instant case, the distinguishing features are, in our judgment, controlling. There the officers knew of burglaries and attempted burglaries in the alley where defendant was found. Here the officers knew of no such crime being committed or having occurred at the time of the search. There the episode occurred at 4:30 A.M.—here at 3:00 P.M. There was emphasized in *Faginkrantz* the impracticality of

attempting to secure a search warrant in the early morning hours, whereas here no explanation is offered as to any obstacle to securing such warrant. There the officers were told by defendant of his past criminal record,—here such knowledge was acquired only after the initial search and discovery of the articles. Although the People stress the fact that there was a rubberized cord hanging from the trunk door, this does not seem to us to be a particularly suspicious circumstance.

We believe the recent decision of the United States Supreme Court in *Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. ed. 2d 777, decided subsequently to the trial court's ruling herein, compels the conclusion reached by us here. There police received a telephone complaint at 3:00 A.M. that "three suspicious men acting suspiciously" had been seated in a car parked in the business district since 10:00 P.M. the preceding evening. Thereupon officers went to the parked car and questioned defendant and his two companions. The answers given were evasive and unsatisfactory. All three men admitted they were unemployed— their combined funds totalled 25 cents. One of the men said he had bought the car the preceding day, but had no proof of title. They claimed to be waiting to meet a truck driver who would come through town that night, but did not know what his truck looked like, what time he would arrive or what company he worked for. The officers arrested the three men for vagrancy, searched them for weapons and took them to police headquarters. An officer drove their car to the station from whence it was subsequently towed to a garage. Soon after defendant was booked, officers went to the garage and searched the car, finding two loaded revolvers in the glove compartment. They were unable to open the trunk and returned to the station where a detective told one of the officers to try again to enter the trunk. The officer did so by entering the trunk through the back seat of the

car, finding therein caps, masks, an illegally manufactured license plate equipped to be snapped over another plate and other items introduced in evidence at a subsequent trial.

The United States Supreme Court there held that, at the time of the search, there was no danger that any of the men arrested could have used any weapons in the car, destroyed any evidence of a crime or that the car could have been removed from the locality, and that, therefore, the search without a warrant was unreasonable rendering the items so found inadmissible. That holding seems dispositive of the issue here since Federal standards are controlling as to the reasonableness of searches under the fourth amendment and are enforced against the States through the fourteenth amendment.

The judgment of the circuit court of Du Page County is hereby reversed and the cause remanded for a new trial.

*Reversed and remanded.*