THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLIE RAY BOLDEN, Defendant-Appellant.

Fourth District   No. 14351

Opinion filed October 28, 1977.

TRAPP, P. J., dissenting.

Richard J. Wilson and Donald E. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant appeals his conviction by jury verdict of the offense of possession of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)), and a sentence of 2½ to seven years imprisonment. No sentences were imposed upon the contemporaneous convictions for reckless driving and driving with a revoked license. Upon appeal, he maintains that (a) the court committed reversible error in preventing him from presenting evidence to show that without his knowledge another individual placed the narcotics in the automobile he was driving when apprehended, (b) the State's closing argument was improper, and (c) his guilt was not proved beyond a reasonable doubt.

Defendant, known to the police to have a suspended license, was observed driving his wife's automobile. A hairraising chase through the city at high speed ensued and ended at the defendant's home. Incident to an arrest, a small packet was observed on the driver's seat and examination disclosed that it contained heroin. From the location of the packet it might be inferred that defendant had been sitting on it.

Defendant denied any knowledge of the presence of the dime-sized packet or its contents. The theory of the defense arises in that prior to the commencement of the police chase, a neighbor, Leon Mason, had asked defendant to drive him to an all night grocery store. The evidence is that Mason went into the store and defendant crossed the parking lot to talk to a friend for about 15 minutes. Mason returned to and was seated in the car when defendant came back to the car. Defendant drove Mason to his home and then went to a couple of taverns before the police observed and pursued him.

The significant issues upon appeal arise from defendant's efforts to introduce evidence from which it could be inferred that Mason, or another individual who approached defendant's car while Mason was seated therein and awaiting defendant's return, placed the narcotic in the car and that the small packet was not observed by defendant.

It is argued that the trial court abused its discretion in denying a motion for continuance made on the morning of the trial. The reason for the motion was that defendant had listed a police officer, McGee, as a witness, but the latter was unavailable to testify.

In support of the motion for continuance of the trial, an offer of proof was made that McGee would testify that shortly after the arrest of the defendant the "potential witness," Mason, told McGee and Tomason that he, Mason, had placed the narcotic in defendant's car. It was argued that such testimony would be admissible as an exception to the hearsay rule,

that is, that Mason's alleged statement was a declaration against penal interest.

In *People v. Craven* (1973), 54 Ill. 2d 419, 427, 299 N.E.2d 1, 5, the court cited language from *People v. Lettrich* (1952), 413 Ill. 172, 108 N.E.2d 488, stating:

> " 'The general rule, supported by the great weight of authority, is that extrajudicial declarations of a third party, not made under oath, that he committed the crime, are purely hearsay, and even though they are declarations against interest, are inadmissible. * * * But it would be absurd, and shocking to all sense of justice, to indiscriminately apply such a rule to prevent one accused of a crime from showing that another person was the real culprit merely because that other person was deceased, insane or outside the jurisdiction of the court.' "

In *People v. Ireland* (1976), 38 Ill. App. 3d 616, 348 N.E.2d 277, *appeal denied*, 63 Ill. 2d 560, the reviewing court reversed the trial court which excluded testimony against penal interest when the issue was whether or not defendant knowingly possessed narcotics.

■■ Without recitation of several factors incident to the granting of a continuance for the stated purposes, we find, from this record, that the purported extrajudicial statement does not meet certain criteria found in controlling authorities.

The record shows that upon defendant's release on bail, he asked Mason to come to see him, that they discussed defendant's arrest and the latter apparently asked Mason what he was going to do about the narcotic found in the car. The conversation between Mason and McGee was alleged to have followed.

Mason's statement to McGee, if made, cannot be said to be spontaneous as was found in *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, for the purported statement was made after some discussion with the defendant. Again, within the context of *Chambers*, there is no corroboration by other independent evidence. The facts are thus distinguishable from *Ireland*. The same fact of the discussion of defendant's arrest with Mason prior to his alleged conversation with McGee negates a further criteria found in *Craven* and *Lettrich* that there be nothing to suggest that the defendant induced the exculpatory statement made by the third party out of court. Here, it does not clearly appear that the alleged statement of Mason to McGee was either spontaneous or without inducement by defendant. (*Craven*.) We find no error in the denial of the continuance.

Defendant also contends that the court's rulings with reference to the testimony of Mason, a defense witness, prevented him from showing that another person placed the heroin in the car. Before calling Mason, defense

counsel stated that Mason would testify to this. Counsel asked leave to call him as a court's witness stating that he could not tell whether Mason would rely on his privilege against self-incrimination or testify and if he did testify, whether he would tell the truth. Nothing else was presented to show why Mason should be called as a court's witness and the court refused to do so, stating that a sufficient foundation had not been laid. Mason was then called as an ordinary defense witness. In his testimony he stated that when he returned from the store to the car another person came up to the car and talked to him. Defendant had not returned at that time. When Mason was asked if that person did anything else, the State objected upon the basis of hearsay. The court sustained the objection. Out of the presence of the jury, defense counsel stated that if permitted to answer, Mason would state that the other person then put the narcotic packet into the car defendant had been driving. In making an offer of proof out of the presence of the jury, defense counsel asked Mason if a tinfoil packet was placed in the car while defendant was out of the car. Mason refused to answer upon the theory that his answer might incriminate him. He was then asked if he placed the packet in the car and again exercised the same privilege.

When the trial court originally denied the request to call Mason as a court's witness, the court had indicated that a showing of hostility was required. After Mason claimed his Fifth Amendment privileges, the defense again requested leave to call him as a court's witness. The request was again refused. Later, before the jury, the following colloquy between defense counsel and Mason took place:

"Q. [D]id you place a tinfoil packet in Mr. Bolden's car while he was gone * * *?

A. I have knowledge of the packet. I take the Fifth on it being put in his car. I have knowledge of the packet. I know how and why the packet was there, but I take the Fifth on answering whether I put it in there or not."

■■ ■ Defendant contends that the trial court's sustaining of the objection as to what the third person did next and the refusal to permit Mason to be called as a court's witness were reversible error. The ruling on the hearsay objection was not cited in defendant's post-trial motion and error thereon is waived (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856) unless plain error has occurred or the defect in the ruling affects substantial rights. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) In making offer of proof, the defense did not ask exactly the same question asked before the jury but asked if anybody put a packet in the car. An answer that the third person did this would have been responsive but Mason refused to answer the question as he did when he was asked if he himself put the packet in the car. The defense contends that Mason could

not exercise the privilege against self-incrimination to protect a third person. He could, however, if the testimony that incriminated the third person, also incriminated him. In any event, the defense did not request that Mason be ordered to answer either question. As a result, no offer of proof was made that if permitted to answer, Mason would have stated that the third person put the packet in the car.

■■■ The question to which objection was sustained did not call for an answer that would amount to nonverbal conduct assertive in character. (See McCormick, Evidence §250, at 596 (2d ed. 1972).) The hearsay objection should not have been sustained. Since no proof was offered that, if permitted to answer, Mason would have answered and stated that the third person put the packet in the car, plain error did not occur and the substantial rights of the defendant were not affected.

■■ In his post-trial motion, defendant cited as error, the refusal of the court to call Mason as a "hostile" witness. Upon appeal, he claims that the court's refusal to call Mason as a court's witness erroneously prevented him from showing that someone else placed the packet in the car. The record indicates some confusion as to the capacity in which defendant wished to call the witness. The necessary foundation to authorize the court to designate a witness as a court's witness is a showing of: (a) the doubtful veracity of the witness so that neither side will vouch for his credibility, (b) the ability of the witness to testify as to direct issues, and (c) the necessity of the evidence to prevent a miscarriage of justice. (*People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.) The supreme court has ruled, however, that no error occurs in a criminal case in a trial court's refusal to grant a defendant's request to call a witness as a court's witness until it is shown that the witness is hostile to the defendant. (*People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617.) Here, no showing was made that Mason was hostile to the defendant. The court's ruling was not error.

■■ The trial court permitted defense counsel to ask Mason several leading questions. The inability to obtain answers from Mason was caused by his exercise of his privilege against self-incrimination. The record demonstrates that it is unlikely that he would have given more information if called as a court's witness. Since Mason gave no evidence tending to incriminate defendant, any prohibition against defendant's cross-examining Mason did not violate the doctrine of *Chambers v. Mississippi* that the right of confrontation includes the right to examine a witness incriminating the accused without being required to vouch for the witness. Even if the court's ruling denying defendant's request to have Mason called as a court's witness had been error, it was not reversible error.

■■ Defendant maintains that error occurred in the State's closing

argument because it made reference to Mason's prior convictions for purposes other than to impeach Mason's credibility. Defendant made no objection to this argument at trial and did not cite it as error in his post-trial motion. Without considering problems of waiver, we do not deem the argument to be reversible error. The first portion of the argument cited was actually directed towards Mason's credibility. In the defense closing argument, counsel referred to Mason's drug sale activities and inferred that he had placed the packet in the car. In response to this, the State argued that if a drug pusher had done this it was not likely to have been done gratis or without defendant's knowledge. The argument was proper rebuttal.

■■ ■ Finally, the evidence was sufficient for a reasonable jury to have found defendant's guilt to have been proved beyond a reasonable doubt. Proof of an accused's exclusive control of a place where contraband is found is ordinarily sufficient proof of his possession of the contraband. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) The same rule is applicable to contraband found in an automobile in the exclusive possession of the driver even though someone else earlier had possession of the vehicle and could have placed the item in the car. (*People v. Davis* (1965), 33 Ill. 2d 134, 210 N.E.2d 530.) Although defendant Bolden's wife owned the car, he had control of the car and had been driving it without anyone else in the car for a reasonable time prior to his chase and subsequent arrest. The dangerous high speed flight which defendant made from the police was evidence of his knowledge that he was guilty of a very serious offense. The jury could conclude that neither defendant's fear of being caught driving while his driver's license was suspended nor his stated intention of returning the car before his wife found that he had it was a reasonable explanation for his reckless flight. Although there is a possibility that someone else put the packet on the seat, the jury could have concluded that there was no reasonable explanation why they would do so without defendant becoming aware of it. The case differs from *People v. Connie* (1964), 52 Ill. App. 2d 221, 201 N.E.2d 641, where a police informer had been in the accused's car just before the contraband was found in the car and then fled and was unavailable for testimony. The accused there had the logical explanation that the informer was a former girl friend who had begged him to return to her. She could well have planted the drugs in his car in retaliation for his refusal to return. Her flight would support such a theory. Bolden had no such explanation.

For the reasons stated, we affirm.

Affirmed.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

I would reverse and remand because of the trial court's rulings, (1) that Mason's testimony concerning the acts of a third person was hearsay and, (2) the refusal to make Mason a court's witness because there was no showing of hostility on the part of the latter.

Upon the first issue I cannot agree that substantial rights were not affected. The issue of knowing possession was a contested issue and its determination depends upon the inferences drawn by the trier of fact from the position of the package, described as dime-sized, found on the driver's seat. At least two inferences were argued to the jury and the fair administration of justice requires that the defendant should be permitted to introduce admissible evidence in his defense under Supreme Court Rule 615(a). Errors affecting substantial rights may be noted. Mason cannot claim privilege against self-incrimination in behalf of the other person and the State's argument that the evidence could not be produced because of Mason's claim of privilege is not persuasive. The record shows Mason's answer in part:

> "I know how and why the packet was there, but I take the Fifth on answering whether I put it in there or not."

Such statement does not necessarily support an inference that Mason's claim of privilege for his own acts would make unavailable testimony as to the acts of the third party.

The foundation for designating a witness as a court's witness as stated in *People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138, and its cited cases should not be intermingled and confused with the foundation in proceeding as with a hostile witness. While in *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617, the term "court's witness" was used, the foundation in the evidence was entirely directed to the showing of bias and hostility of the witness toward the defendant.

Here, it was represented to the court and the record shows that Mason had been convicted upon 11 counts of perjury, as well as other felonies, and that the defendant could not vouch for the witness' veracity. It was also represented to the court that defendant was an eyewitness to the transaction at the automobile and that his testimony was essential to preventing a miscarriage of justice. It is not apparent how hostility is a necessary part of the foundation under such circumstances. It is too speculative for this court to conclude at this time that examination of Mason as upon cross-examination would have been fruitless.